UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

ROTHSTEIN ROSENFELDT ADLER, P.A.,     CHAPTER 11

    Debtor.     CASE NO.: 09-34791-BKC-RBR
_____/

HERBERT STETTIN, Chapter 11 Trustee,

    Adv. Pro. No 10-03664-BKC-RBR-A

    Plaintiff,
v.

QTASK INC.,

    Defendants.
_____/

### TRUSTEE'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT [D.E. 13]

The Defendant's Motion to Dismiss And Summary Judgment[1] [D.E. 13] (the "Motion") should be denied because it incorrectly construes the application of forfeiture law and it fails to articulate a legal basis to dismiss the complaint. For the reasons more fully set forth below, Plaintiff, Herbert Stettin, as Chapter 11 Trustee for the estate of Rothstein Rosenfeldt Adler, P.A. ("Plaintiff" or "Trustee"), hereby requests that the court deny the Motion.

### Introduction

$7.5 million of the Debtor's money was transferred to and received by Qtask. The Trustee, consistent with his statutory and fiduciary duties, seeks to recover these sums.

Qtask makes the following arguments in favor of dismissal: (1) the complaint violates the District Court's forfeiture related orders; (2) the Trustee's claims are barred by the *in pari delitco*

---

[1] Although the motion states that it is a motion for summary judgment there is no accompanying affidavit from the defendant. Moreover, it appears that the entire basis for summary judgment appears to be some unexplained inference that this Court should draw from the Scott Rothstein criminal proceedings. *See* Motion at footnote 2.

doctrine; and (3) the Trustee fails to plead actual fraud with particularity. The Trustee responds to each of these arguments in turn.

### I.  The Trustee's Adversary Proceeding Against the Defendants Does Not Violate the District Court's Protective Order

Qtask asserts that the Trustee's complaint "violates both the Protective Order and the federal law regarding forfeiture." *See* Motion at 4.  This is not a correct or new argument.  In fact,  the Adlers have vigorously pursued this argument before this Court and the district court. In all instances, it has been rejected by both courts.

The Adlers filed a *Motion to Enforce Protective Order, Enjoin Adversary Proceeding and Bar Double Recovery* [Criminal Case D.E. 108/109] (the "Motion to Enforce") in *USA v. Rothstein*, 09-60331-Cohn (S.D. Fla. 2009) (the "Criminal Case"). The Motion to Enforce raised the same arguments that Qtask now raises.  Judge Cohn denied the motion. *See* Criminal Case D.E. 141. In his order denying the Adlers' request to enforce the protective order, Judge Cohn noted that the "Order of Forfeiture renders the Protective Order moot." Accordingly, the Trustee's complaint is not in violation of any protective order entered by the district court. Additionally, the Adlers' raised this issue as part of their motions to dismiss that were filed before this Court. *See Stettin v. Adler (In re Rothstein Rosenfeldt Adler P.A.)*, 10-2612-RBR-A [D.E. 13 and 86].  Those motions were also denied. *See Id* [D.E. 51 and 93].

There is no substantive difference between the arguments raised by the Adlers and those raised by Qtask. Accordingly, the Court should treat Qtask's argument in the same fashion as it treated the Adlers' motions and deny the relief Qtask requests.

### II.  Qtask Improperly Conflates Ownership of the AAMM Shares and the Recovery of Avoidable Transfers

Qtask, or its attorney, have improperly conflated the avoidance and recovery of

2

fraudulent transfers by the Trustee with the ownership of the AAMM shares. It is undisputed that AAMM was listed on the preliminary order of forfeiture. *See* Criminal Case D.E. 134. However, that is immaterial to the Trustee's complaint. As this Court has previously recognized, the Trustee is honed in on the "transfers, " not what assets have been purchased with the transfers. *See Transcript of October 26, 2010* at 13:14-14:2 (noting that what the defendants did with the transfers is irrelevant to the Trustee's right to avoid and recover them). Therefore, to the extent the Trustee has traced a transfer from RRA to Qtask the Trustee may avoid and recover that transfer.

Qtask's argues that the "failure of the Trustee to allege shares of stock in Qtask, Inc. were exchanged for investment monies is not an irrelevancy, but a serious omission. The Government and the District Court have declared that Rothstein entities' shares in Qtask, Inc. are not part of the bankruptcy estate." Motion at 7. Qtask's entire argument predicated upon the government's forfeiture of the shares of AAMM, a company that held Qtask shares, is irrelevant. To be clear, the Trustee has not sought to recover, recoup, levy upon or otherwise encumber any shares issued by Qtask or held by AAMM. The Trustee has narrowly focused on the transfers made by RRA, of which $7.5 million ended up with Qtask. Accordingly, just as with the Adlers' apartment, Qtask's issuance of stock or shares to AAMM is entirely irrelevant to the Trustee's complaint.

### III. *In Pari Delicto* Cannot Be A Basis To Dismiss The Complaint

Qtask improperly raises the affirmative defense of i*n pari delicto* as a reason for this Court to dismiss the Trustee's claims. The Trustee's seven count complaint only asserts claims for the avoidance and recovery of fraudulent transfers. Several Circuits have ruled that the *in pari delicto* defense is inapplicable to fraudulent transfers and preferences. *See Kipperman v.*

3

*Onex Corp.*, 411 B.R. 805, 880 (Bankr. N.D. Ga 2009)(collecting cases). The *Kipperman* court also determined that "the Eleventh Circuit's decisions in *In re Davis*, 785 F.2d 926 (11th Cir. 1986) and its dicta in *Edwards*, 437 F.3d 1145, indicate that the Eleventh Circuit would follow the Third and Sixth Circuits and find that the *in pari delicto* defense may not be used against the trustee to bar fraudulent transfer and preference action…" *Kipperman v. Onex Corp.*, 411 B.R. 805, 880 (Bankr. N.D. Ga 2009). Accordingly, *in pari delicto* is not even an appropriate defense to the claims brought by the Trustee, let alone grounds to dismiss the complaint outright.

Moreover, on a motion to dismiss, the court "is generally limited to considering the allegations in the operative complaint, which are assumed to be true in ruling on the motion." *Pearlman v. Alexis*, 2009 U.S. Dist. LEXIS 88546 at *7 (S.D. Fla. Sept. 25, 2009). It is well settled law in the Eleventh Circuit "that 'plaintiff[s] [are] not required to negate an affirmative defense in [their] complaint[s]." *Ventrassist Pty, Ltd. v. Heartware, Inc.*, 377 F. Supp. 2d 1278, 1286 (S.D. Fla. 2005) (quoting *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)); *accord Fortner v. Thomas*, 983 F.2d 1024, 1028 (11th Cir. 1993)("We first note that generally, the existence of an affirmative defense will not support a rule 12(b)(6) motion to dismiss for failure to state a claim.").

It is also well settled that *in pari delicto* is an affirmative defense. *Pinter v. Dahl*, 486 U.S. 622, 657 (1988) (finding "that there was no factual basis for the *in pari delicto affirmative defense* as pleaded.")(emphasis added); *Simon v. Shearson Lehman Bros.*, 895 F.2d 1304, 1321 (11th Cir. 1990) (noting that the claims "were barred by the *affirmative defense of in pari delicto*") (emphasis added); *Goldberg v. Chong*, 2007 U.S. Dist. LEXIS 49980 at *29 (S.D. Fla. 2007) (Judge Huck) (finding that a "Receiver's unjust enrichment claim is not barred by the *affirmative defense of in pari delicto*.")(emphasis added). As such the usual burdens of

4

3401628-3

affirmative defenses apply to *in pari delicto*.[2] Judge Hurley noted, in a receivership case, that "because *in pari delicto* is an affirmative defense requiring proof of facts asserted by the defendant, it is usually not an appropriate ground for a *Rule 12(b)(6)* dismissal." *Pearlman v. Alexis*, 2009 U.S. Dist. LEXIS 88546 at *7.

The Defendants' *in pari delicto* claim improperly shifts the burden from the Defendants to the Trustee. If the Defendants were able to assert *in pari delicto* as a basis for dismissal of a complaint, the Trustee would be required to plead sufficient facts not just to state a claim, but to negate a potential and unproven affirmative defense. This results in impermissible and improper burden shifting. Accordingly, *in pari delicto* is not applicable to this case and cannot properly serve as a basis to dismiss the complaint.

### IV. The Complaint Contains Sufficient Facts To State A Claim For Actual Fraud

Qtask also claims that the Trustee's complaint should be dismissed because "a claim alleging an actual fraudulent transfer… must satisfy the particularity requirement of Federal Rule of Civil Procedure 9(b)." This theory for dismissal of all of the allegations relating to actual fraud (Counts I and III) is ill founded. The law is clear that a "Ponzi scheme is by definition fraudulent. By extension, any acts taken in furtherance of the Ponzi scheme, such as paying brokers commissions, are also fraudulent. Every payment made by the debtor to keep the scheme on-going was made with the actual intent to hinder, delay, or defraud creditors, primarily the new investors." *Cuthill v. Greenmark, LLC (In re World Vision Entm't, Inc.)*, 275 B.R. 641, 656

---

[2] Fed. R. Civ. P. 8 (c) is made applicable to bankruptcy proceedings by Fed. R. Bankr. P.7008. This rule states a party shall plead their affirmative defenses in response to a prior pleading. Courts have held that "affirmative defenses require the defendants to bear the burden of proof on those particular issues." *Edgewater Med. Ctr. v. Rogan (In re Edgewater Med. Ctr.)*, 332 B.R. 166, 175 (Bankr. N.D. Ill. 2005).

(M.D. Fla. 2002). Moreover, the statute is designed to test the Debtor's fraudulent intent, not the recipients. The relevant part of the statute provides that the Trustee may avoid any transfer "if the *debtor* voluntarily or involuntarily made such transfer… with the actual intent to hinder, delay, or defraud any entity to which the debtor was or became… indebted." 11 U.S.C. §548(a)(1)(A) (emphasis added). The existence of the Ponzi Scheme as explained in paragraphs 8-14 and the inclusion of references to the criminal case are sufficient to meet any pleading requirements in this case.

The cases relied upon by Qtask are without exception, inapplicable to this case. *In re Caremerica Inc*. does not involve a Ponzi Scheme. The chapter 7 trustee in that case failed to allege "fraudulent conduct by the debtor." *In re Caremerica*, 2009 WL 2253225 at *5 (Bankr. E.D. N.C. 2009). Trustee Stettin has alleged that "Rothstein admitted to conspiring with others to use RRA as a criminal enterprise to conduct a pattern of illegal activity." *See* D.E. 1 at paragraph 11. In addition, the Trustee pled that Rothstein had been charged with and convicted of committing various crimes relating to his Ponzi Scheme. *Id* at paragraph 10. Accordingly, *Caremerica* does not provide guidance in this case.

In *In re Derivium Capital, LLC*, the chapter 7 trustee sued to recover fraudulent transfers. *In re Derivium Capital, LLC*, 380 B.R. 429, 436 (Bankr. S.C. 2006). The court dismissed the state law actual fraud claims because the Trustee failed to "allege the approximate dates of the transfers and particular individuals or entities involved." *Id* at 438. The court also dismissed the 11 U.S.C. §548(a)(1)(A) claims because the complaint "merely tracks the language of the statute and fails to specify any facts in support of its allegations." *Id* at 439.

Trustee Stettin has attached three exhibits to the complaint that lists every transfer, the date it occurred, and the check number (where applicable). In addition, the complaint in

paragraphs 16-31 explains in detail each set of transactions, and for the SWR Transfers provides a detailed tracing and lowest intermediate balance analysis. *See* D.E. 1 at paragraphs 16-31. Moreover, the complaint contains sufficient facts and details about the criminal activities conducted through the firm. *See* D.E. 1 at paragraphs 8-14. Accordingly, the *Derivium Capital, LLC* case is not analogous or helpful to Qtask.

In *Verestar Inc.,* the court dismissed claims brought by the committee on behalf of the chapter 11 debtor to recover actually fraudulent transfers because the committee "provide[d] no additional allegations of fraudulent intent necessary to support its claims for actual fraudulent transfer." *In re Verestar Inc.*, 343 B.R. 444,469 (Bankr. S.D.N.Y. 2006). Unlike RRA, *Verestar* did not involve a ponzi scheme. Accordingly there was a need to spell out the details of the fraud and tie it to the badges of fraud. *See Id* ("the complaint does not adequately tie the [transfer] to one of the badges of fraud that are characteristic of intentionally fraudulent transfers or allege facts from which one could find fraudulent intent." ).

The Trustee's complaint against Qtask is markedly different. Here, the Trustee has incorporated the criminal activity of the Ponzi Scheme that operated from the Debtor's office as the principal allegation of the fraud. This Court has recognized that where the debtor is involved with a Ponzi Scheme, then fraudulent intent on the part of the debtor is presumed. *See Stettin v. Adler (In re Rothstein Rosenfeldt Adler P.A.)*, 2010 Bankr. LEXIS 4662 (Bankr. S.D. Fla. Dec. 14, 2010)("bankruptcy courts nationwide have recognized that establishing the existence of a Ponzi scheme is sufficient to prove a Debtor's actual intent to defraud.").

Qtask may be entirely "innocent of any fraud" as it claims, but that alone is insufficient to cause the Trustee's claims to fail. Whatever Qtask did or did not know is immaterial, because it is RRA's intent that is material, not Qtask's. *Id* at *14-15.

Finally, Qtask relies upon a quote taken out of context from *Kenny v. Bear Stearns & Co. Inc., (In re Daisy Systems Corp.)*, 1993 WL 491309 (N.D. Cal. 1993). In *Kenny,* the chapter 11 trustee of the debtor sued Bear Stearns as well as the officers and directors of the debtor's takeover target as a result of a prepetition leveraged buyout transaction, in which the debtor had been the acquirer. *See Id* at *1-3. The district court discussed the *Kupetz v. Wolf* decision in which the Ninth Circuit stated "we decline to use the law of fraudulent conveyances to force selling shareholders in this case to give up the payments they have received." *Id* at *9; *see also* Motion at 9.  However, the court also finished the quote from the Ninth Circuit which explained <u>why</u> the court was so moved in that case; the factors cited by the Ninth Circuit included: (1) no evidence of the selling shareholders to defraud the corporation's creditors; (2) selling shareholders did not know that the buyer intended to undertake a leveraged buyout; (3) the trustee represented no creditors whose claims against the estate arose before the transaction and who did not have a full opportunity to evaluate the effect of the leveraged buyout transaction; and  (4) the transaction was an arms length transaction.

None of these factors applies in the case of the recovery of fraudulent transfers within the context of a Ponzi scheme. The transfers to Qtask were not part of a leveraged buyout transaction, nor did Qtask provide reasonably equivalent  value <u>to RRA</u> in return for the transfers.  Many creditors predate the transfers to Qtask and none of these creditors had any opportunity or knowledge that RRA was making transfers to the determinant of its creditors. The non-binding law of the Ninth Circuit regarding leveraged buyout failures is simply not applicable to this case.

Finally, Qtask argues that the constructive fraud claims of the Trustee (Counts II, IV and V) should be dismissed because the Trustee "fails to alleged that there was no reasonably

equivalent value, when there is no mention of an exchange of stock in return for investment monies." Motion at 7. This statement is factually incorrect. The Trustee alleged that the estate did not receive reasonably equivalent value three separate times in the complaint. *See* D.E. 1 at paragraphs 38, 45, and 49. Moreover, even according to Qtask's own allegations, any stock issued by it was not issued to RRA. Instead, the stock was issued to AAMM. Accordingly, <u>the Debtor</u> never received any reasonably equivalent value.

The Trustee has adequately pled fraud in the complaint and Qtask has not provided any case law that requires the Trustee to plead with any greater specificity.[3]

## **CONCLUSION**[4]

This Adversary Proceeding is straight forward: Qtask received a substantial amount of RRA's money without providing reasonably equivalent value in return. Moreover, Qtask was intimately connected to the Ponzi scheme. Mr. Rothstein described Qtask as his "exit strategy" from the Ponzi scheme. In his sentencing letter to the Court, Mr. Rothstein stated "I convinced myself that my exit strategy would work. It was my only hope. I kept telling myself that I just

---

[3] Qtask cites to two Florida state cases in footnote 5 of its Motion for the proposition that "realleging paragraphs in preceding alleged causes of action is improper." *See* Motion at footnote 5. This is direct contravention to Fed. R. Bank. P. 7010 incorporating Fed. R. Civ. P. 10, which states "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." Accordingly, whatever those Florida state court cases may say is immaterial to this case which is governed by the Federal Rules of Bankruptcy Procedure.

[4] The Trustee objects to both section IV of the Motion titled "motion to strike attorney's (sic) fees" and section V titled "Alternatively, a motion for stay should be granted because Trustee has requested a stay of the order granting the untied states' motion to dismiss trustee's verified claims and petition." The relevance of these sections is difficult to understand and in any event procedurally improper.

In respect of the attorneys' fees, the Trustee requested that he be awarded such fees to the extent permitted under applicable law. Pursuant to Federal Rule of Bankruptcy Procedure 7054, should the Trustee prevail he would have 14 days from the entry of judgment to file a motion to seek attorneys' fees, at that time the Trustee would be required to explain the basis for doing so. Accordingly, it is premature for Qtask to strike this request.

Qtask's request for a stay is irrelevant to the issues at hand. Whether the Trustee prevails on appeal of the disposition of his verified claims before the district court has no bearing on Qtask. There is no reasonable basis for this Court to stay this adversary proceeding.

3401628-3

needed to hang on for a few more months. And months became years. I had used millions of dollars of the money from my fraud to buy a huge state in an internet company, qtask, [sic] that from all appearances was going to make a killing." *See United States v. Rothstein* [D.E. 272-2] 09-60331 (S.D. Fla. 2009). These fraudulent transfers are subject to avoidance and recovery, and accordingly the Court should deny the Defendant's Motion. The Trustee respectfully requests that if the Court determines that any of the Qtask's assertions have merit that this Court grant leave to file an amended complaint.

WHEREFORE, Plaintiff, Herbert Stettin, respectfully requests that the Court deny Qtask's Motion to Dismiss [D.E. 13], or alternatively grant the Trustee leave to file an amended complaint, and grant such other relief as this Court deems just and proper.

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the forgoing was served electronically via the Court's CM/ECF system and via first class mail upon all parties on the attached Service List on this 24th day of January 2011.

Dated: January 24, 2011.

Respectfully submitted,
BERGER SINGERMAN, P.A.
Attorneys for the Trustee, Herbert Stettin
200 South Biscayne Boulevard Suite 1000
Miami, Florida 33301
Main Line: (305) 755-9900
Facsimile: (305) 714-4340

By: /s/  Paul Steven Singerman
Paul Steven Singerman
Fla. Bar No. 378860
singerman@bergersingerman.com
Charles H. Lichtman
Fla. Bar No. 501050
clichtman@bergersingerman.com
Isaac M. Marcushamer
Fla. Bar No. 60373
imarcushamer@bergersingerman.com

10

## **SERVICE LIST**

Robert C. Buschel, Esq.
Buschel Gibbons, P.A.
One Financial Plaza, Suite 1300
100 S.E. Third Avenue
Fort Lauderdale, FL, 33394
(buschel@bglaw.com)